**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CITIZENS UNITED RECIPROCAL EXCHANGE**, ***et al.***,

Plaintiffs,

v.

**JUSTIN ZIMMERMAN**, *in his individual and official capacities as the New Jersey Commissioner of the Department of Banking and Insurance,* ***et al.***,

Defendants.

Civil Action No. 25-18830 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants Justin Zimmerman, in his individual and official capacities as the New Jersey Commissioner of the Department of Banking and Insurance ("Zimmerman") and David Wolf, in his individual and official capacities as the Acting Assistant Commissioner of New Jersey's Office of Solvency Regulation ("Wolf," and together with Zimmerman, "Defendants"). ("Defendants' Motion", ECF No. 19.) Defendants' Motion was accompanied by a moving brief. ("Defs.' Moving Br.", ECF No. 19-1.) Plaintiffs Citizens United Reciprocal Exchange ("CURE"), Reciprocal Management Corporation ("RMC"), and Eric S. Poe ("Poe", and together with CURE and RMC, "Plaintiffs") opposed ("Pls.' Opp'n Br.", ECF No. 24), and Defendants replied ("Defs.' Reply Br.", ECF No. 28).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion to Dismiss and the Complaint will be DISMISSED WITHOUT PREJUDICE.

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

CURE is a New Jersey not-for-profit reciprocal exchange insurer that was founded in 1990. ("Compl." ¶ 2, ECF No. 1.) CURE has authority to write automobile insurance in New Jersey pursuant to the New Jersey Reciprocal Exchange Act, N.J. Stat. Ann. § 17:50-1, *et seq.* ("NJREA"). (*Id.*) RMC is CURE's for-profit attorney-in-fact. (*Id.* ¶¶ 3, 18.) Poe has a material ownership in RMC and is its Chief Executive Officer. (*Id.* ¶ 3.) Zimmerman is the Commissioner of the New Jersey Department of Banking and Insurance ("DOBI"). (*Id.* ¶ 22.) Wolf is the Acting Assistant Commissioner of the New Jersey Office of Solvency Regulation, which is within the Insurance Division of the DOBI. (*Id.* ¶ 24.)

CURE is regulated by DOBI. (*Id.* ¶ 4.) Under the NJREA, CURE, RMC, and Poe, as well as CURE's subscribers and policyholders are not regulated under any other New Jersey Statute relating to insurance except as provided by the NJREA. (*Id.* (quoting N.J. Stat. Ann. § 17:50-1).) As such, DOBI never historically applied the statutory requirements of the New Jersey Insurance Holding Company Systems Act, N.J. Stat. Ann. § 17:27A, *et seq.* ("NJHCA") to CURE or RMC. (*Id.* ¶¶ 5–6.) That changed with Defendants. (*Id.* ¶ 7.)

---

[1] For the purpose of considering Defendants' Motion to Dismiss, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Additionally, the Court considers documents that are: (1) indisputably authentic and integral to the Complaint; and (2) matters of public record. *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2003). In the event the facts contained in the integral documents are inconsistent with the allegations within the Complaint, the facts of the Complaint govern. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

In 2020, CURE sought to expand its reciprocal exchange enterprise into Michigan. (*Id.* ¶ 92.) RMC began negotiating with a third-party investment group because of the significant capital investments required and because CURE could not raise capital as a not-for-profit entity. (*Id.* ¶¶ 93–95.) In August 2021, the parties were set to execute an affiliated Stock Purchase Agreement (the "Transaction"). (*Id.* ¶ 96.) Under the NJHCA, traditional insurance companies are required to complete and submit a "Form A" to DOBI, which then requires DOBI to undertake a regulatory review of the proposed transaction. (Compl. ¶ 97.) The NJREA does not impose such a requirement. (*Id.* ¶ 98.) CURE's General Counsel wrote to the Office of Solvency Regulation for DOBI to inform it that CURE would not file a "Form A" for the Transaction under the NJHCA. (*Id.* ¶ 99.) On August 12, 2021, Wolf responded to Lowe's correspondence and stated that CURE must file a "Form A." (*Id.* ¶ 100.) Due to the time-sensitive nature of the Transaction, CURE submitted a "Form A." (*Id.* ¶ 102.)

During the "Form A" review process, DOBI required CURE to comply with the NJHCA and adopted the position that the Statements of Statutory Accounting Principles ("SSAP") No. 25 applied to RMC's attorney-in-fact fees ("AIF Fees"). (*Id.* ¶¶ 105–119, 123–32.) Accordingly, DOBI requested financial information related to SSAP No. 25, but Plaintiffs objected. (*Id.*) Nevertheless, Plaintiffs submitted the information requested by DOBI pursuant to SSAP No. 25. (*Id.* ¶ 121.) DOBI also required Plaintiffs to execute a capital maintenance agreement ("CMA"), requiring CURE to maintain a minimum risk-based-capital ("RBC") level of three hundred percent. (*Id.* ¶ 145.) Plaintiffs repeatedly objected but nonetheless complied. (*Id.* ¶¶ 149–154.) On December 21, 2022, DOBI issued Order A22-13 approving the Transaction. (*Id.* ¶ 158.)

One day before the Transaction was approved, DOBI issued Bulletin 22-11 (the "Bulletin"), which memorialized DOBI's view that reciprocal exchanges are required to comply

with the NJHCA and SSAP No. 25. (*Id.* ¶¶ 156–57.) Two non-parties, of which Poe holds a majority ownership, filed an appeal challenging the Bulletin to the New Jersey Superior Court, Appellate Division. (*Id.* ¶¶ 161–62, 164.) On May 5, 2025, the Appellate Division concluded that Defendants' imposition of Bulletin 22-11 constituted improper rulemaking under New Jersey's Administrative Procedure Act, N.J. Stat. Ann. § 52:14B-1, *et seq.* (*Id.* ¶ 169.)

In March 2025, RMC filed a notice of divestiture (the "Divestiture") with DOBI, pursuant to N.J. Stat. Ann. § 17:27A-2, related to a transaction wherein a third party agreed to reduce its ownership in RMC in favor of Poe. (*Id.* ¶¶ 174–79.) The Divestiture required DOBI approval under the NJHCA. (*Id.* ¶ 181.) The parties disputed whether the NJHCA applied to the Divestiture. (*Id.* ¶¶ 180–95.) On September 4, 2025, Zimmerman issued a Notice of Public Hearing for September 24, 2025 (the "September 24 Hearing") regarding: (1) approval of the Divestiture; and (2) an application to acquire and change control of CURE pursuant to the NJHCA. (*Id.* ¶¶ 196–97.) By September 15, 2025, CURE and RMC filed an order to show cause in New Jersey Superior Court, Law Division, seeking preliminary and permanent injunctive relief enjoining DOBI from, among other things, attempting to apply the Bulletin and the HCA against them. (*Id.* ¶ 200.) By September 20, 2025, CURE and RMC filed an emergency temporary restraining order to enjoin DOBI from conducting the September 24 Hearing, which the court denied. (*Id.* ¶¶ 203–04.) The September 24 Hearing was not stayed, and DOBI approved the Divestiture on September 24, 2025. (*Id.* ¶¶ 202, 205; *see also* ECF No. 19-8 (September 24, 2025 Order No. A25-06 approving the divestiture).) CURE and RMC subsequently withdrew their order to show cause. (*Id.* ¶ 206.)

In the interim, Plaintiffs allege that Defendants took retaliatory actions against Plaintiffs as a result of: (1) Plaintiffs' objections to DOBI's attempts to apply the HCA to CURE and SSAP

No. 25 to the AIF Fees paid to RMC by individual subscribers; and (2) Plaintiffs' participation in the appeal of the Bulletin. (*Id.* ¶¶ 198, 216, 245, 267, 296, 309, 336, 350.) Those retaliatory actions included, but were not limited to: (1) enforcing the NJHCA against CURE without authority; (2) applying SSAP No. 25's accounting standards and disclosure requirements to the attorney-in-fact paid by RMC's policyholders without authority; (3) attempting to vitiate RMC's contractual rights with subscribers by reducing AIF Fees; (4) causing regulatory delays; (5) disregarding the Appellate Division Decision; (6) initiating burdensome investigations; (7) making inconsistent regulatory demands; (8) "threat[ening] . . . an attack against the recent [d]ivestiture"; and (9) forcing a reduction of RMC's AIF Fee without basis. (*Id.* ¶¶ 7, 62–64, 90, 357, 363.)

### A. THE ALLEGED PATTERN OF RETALIATION

*First*, on October 29, 2024, a non-party reinsurance entity, of which Poe is the fifty-percent owner, sought to dissolve and distribute its remaining funds, and it filed a request for such approval with DOBI. (*Id.* ¶¶ 246–61.) DOBI, however, would not approve the distributions without the entity's retrocessional coverage for "unvalued and unidentified" liabilities from 2003 to 2018. (*Id.* ¶ 262.) Poe requested a meeting with Wolf on three separate occasions to discuss the distribution and dissolution, but Poe's requests went unanswered. (*Id.* ¶¶ 265–66.)

*Second*, on January 14, 2024, DOBI notified RMC that it must approve RMC's amended power of attorney ("POA") filing pursuant to the NJREA and that the process required RMC to provide "reasons and supporting materials" for its review, such as financial projections and detailed rationale. (*Id.* ¶ 271.) RMC responded by letter dated January 27, 2024, noting the amended POA's compliance with the NJREA and objected to DOBI's requests for reasons and supporting materials, asking DOBI to assert statutory authority for its position. (*Id.* ¶ 272.) DOBI

responded on February 2, 2024, ignoring RMC's request for statutory authority and refusing to review the POA unless RMC provided the information requested by DOBI. (*Id.* ¶ 273.) The parties continued disagreeing as to whether the NJREA imposed such requirements, and no final agency decision was ever made. (*Id.* ¶¶ 273–286.)

*Third*, from December 2022 to March 2023, DOBI conducted a routine financial examination of CURE. (*Id.* ¶¶ 292, 299.) Defendants expanded the scope of the examination from prior examinations, requiring additional hours of involvement by an external auditor, which was projected to cost approximately $325,000 billed to CURE. (*Id.* ¶¶ 292, 297.) CURE objected to the projected costs, and DOBI responded that the final total would be $285,000. (*Id.* ¶¶ 298–300.) The previous exam cost approximately $80,000 and did not include demands for information related to RMC's AIF Fees or compliance with SSAP No. 25. (*Id.* ¶ 295.)

*Fourth*, on October 31, 2024, DOBI issued its examination report and found that CURE failed to provide the examiners with all necessary information to assess whether the AIF Fees complied with SSAP No. 25 and Order A22-13. (*Id.* ¶ 302.) CURE provided affidavits from its board members, acknowledging receipt of the report and noting CURE's disagreements with DOBI's methodologies. (*Id.* ¶ 303.) On November 18, 2024, Wolf issued a letter to CURE commencing a limited scope investigation and demanding CURE respond to information regarding RMC's AIF Fees. (*Id.* ¶¶ 304–05.) CURE again objected. (*Id.* ¶ 306.) On March 3, 2025, DOBI issued a subpoena directed at RMC's Chief Financial Officer demanding the same information. (*Id.* ¶ 307.)

*Fifth*, between August 31, 2022 and February 6, 2025, CURE filed several proposed rate changes to DOBI for approval. (*Id.* ¶¶ 316–320.) Each time CURE submitted a proposed rate change, DOBI filed between twenty-seven to thirty-one objections to each respective proposed

rate change and did not approve the filing within the thirty-day timeframe provided by New Jersey's Administrative Code. (*Id.* ¶¶ 317, 319, 321, 324–25.) CURE responded to DOBI's latest objections on April 16, 2025, and followed up with DOBI between July 2025 and November 2025. (*Id.* ¶¶ 322, 326.) As of August 2025, DOBI indicated that it was still conducting its evaluation, and upon information and belief, Plaintiffs aver that DOBI staff were coordinating with Defendants to impose the NJHCA's requirements upon CURE and SSAP No. 25 to the AIF Fees paid to RMC. (*Id.* ¶¶ 328–29.) In 2025, DOBI approved rate increases for sixty-nine of the seventy-seven automobile insurers in New Jersey. (*Id.* ¶ 331.) CURE advised DOBI that it intended to take legal action, but DOBI approved CURE's latest rate increase on November 4, 2025. (*Id.* ¶ 332.)

*Sixth*, DOBI issued an examination report for the period of January 1, 2022 through December 31, 2024, which found that: (1) pursuant to SSAP No. 25 and Order A22-13, the maximum allowable AIF Fees were not fair and reasonable; (2) RMC and CURE must amend the POA to allow for fair and reasonable compensation; and (3) RMC and CURE must establish a service agreement whereby related parties agree to the services provided by the AIF and the fees to be paid in exchange for AIF services. (*Id.* ¶¶ 342, 345.) DOBI therefore issued this examination report requiring RMC to reduce its AIF Fee, despite never raising an objection to RMC's POA since 1990, and upon information and belief, this report served as the first time DOBI ever required an AIF to reduce its fees. (*Id.* ¶¶ 346–47.)

*Seventh*, on May 9, 2025, DOBI sent CURE a 2024 Annual Statement Review letter (the "2024 Review"). (*Id.* ¶ 232.) The 2024 Review letter made more than forty requests for information, including requests for SSAP No. 25-related information regarding the AIF Fee. (*Id.* ¶ 234.) For example, the letter requested that CURE "provide support that the AIF [F]ees paid by

CURE for services, including but not limited to management support functions, are in compliance with SSAP No. 25." (*Id.* ¶ 237.) The same letter stated that CURE should refrain from paying any amounts to RMC for services that do not comply with SSAP No. 25 and, if out of compliance, those amounts should be recovered. (*Id.* ¶ 239.)

*Eighth*, in July 2025, DOBI sent notices of proposed rulemaking under the New Jersey Administrative Code regarding certain amendments: (1) to "memorialize the [DOBI's] long-standing reading of 'person' as defined by the [NJHCA] to include a reciprocal insurance exchange"; and (2) "codify the [DOBI]'s long-held position[s]" that reciprocal exchanges are subject to filing requirements under the HCA and that AIF Fees are subject to SSAP No. 25. (*Id.* ¶¶ 206–07.) CURE provided its comments to DOBI's notice of proposed rulemaking, asserting its same objections. (*Id.* ¶ 211.)

### B. PROCEDURAL HISTORY

Against this elaborate factual backdrop, Plaintiffs commenced this action on December 19, 2025, bringing two causes of action under 42 U.S.C. § 1983 for First Amendment retaliation. (*See generally id.*) Defendants filed the present Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] (Defs.' Mot.; *see generally* Defs.' Moving Br.)

## II. <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint asserts causes of action arising under the Constitution, laws, or treaties of the United States.

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

## III. LEGAL STANDARDS

### A. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Generally, "[w]hen subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). Challenges based on the Eleventh Amendment are different, however, insofar as "the party asserting immunity . . . bears the burden of production and persuasion." *Maliandi v. Montclair State University*, 845 F.3d 77, 82 (3d Cir. 2016) (quoting *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 228–29 (3d Cir. 2006).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).

### B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court must identify all of the plaintiff's well-pled factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

## IV. DISCUSSION

Defendants raise multiple arguments in favor of dismissal, including, but not limited to: (1) Defendants, in their official capacities, are entitled to sovereign immunity under the Eleventh Amendment as to any claims for damages; (2) Plaintiffs otherwise fail to state a claim upon which relief can be granted; and (3) Defendants, in their individual capacities, are entitled to quasi-

judicial immunity. (*See generally* Defs.' Moving Br.) For the reasons set forth below, the Court agrees that dismissal is appropriate.[3]

**A. SOVEREIGN IMMUNITY**

Defendants assert that any claims for money damages brought against them in their official capacities are barred under the Eleventh Amendment. (Defs.' Moving Br. at 31–32.) In their opposition, Plaintiffs clarify that "they do not seek monetary damages from Defendants in their official capacities." (Pls.' Opp'n Br. at 26.) Accordingly, to the extent Plaintiffs' claims might be construed to seek money damages from Defendants in their official capacity, those claims will be dismissed without prejudice for lack of subject matter jurisdiction.

**B. QUASI-JUDICIAL IMMUNITY**

As to claims asserted against them in their individual capacities, Defendants separately contend that they are entitled to absolute quasi-judicial immunity. (Defs.' Moving Br. at 16–25.) They cite *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) in support of their position that their roles as DOBI Commissioners are functionally comparable to that of a judge by implementing and enforcing administrative orders. (*Id.*) Plaintiffs argue, in opposition, that quasi-judicial immunity is not warranted under the *Cleavinger* factors because the acts complained of were not judicial in nature "but rather of [ ] regulator[s] intent on imposing [their] illegal position[s]." (Pls.' Opp'n Br. at 8–14.)

Contrary to Plaintiffs' point, the decision of "whether to extend quasi-judicial immunity to a [government] official involves a 'legal determination' that focuses on 'the legal and structural components of the job function, as opposed to detailed facts about specific acts and mental states.'" *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 101 (3d Cir. 2011) (quoting

[3] The Court does not reach all of Defendants' arguments in favor of dismissal because the Court finds that dismissal is appropriate on sovereign and quasi-judicial immunity grounds.

*Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006) (explaining that courts evaluate "the official's job function, as opposed to the particular act of which the plaintiff complains")).

In *Cleavinger*, the Supreme Court enumerated six non-exhaustive factors that are "characteristic of the judicial process" to determine whether a government official's actions are functionally equivalent to that of a judge such that absolute immunity applies. *Cleavinger*, 474 U.S. at 202. Those factors are: (1) the need to assure that the government official can perform his or her functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private actions seeking damages as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. *Id.* Courts in this District have determined that DOBI Commissioners are entitled to quasi-judicial immunity. *See Savadjian v. Caride*, Civ. No. 18-16381, 2019 WL 6975102, at *3 (D.N.J. Dec. 20, 2019), *aff'd*, 827 F. App'x 199 (3d. Cir. 2020); *Constantine v. N.J. Dep't of Banking & Ins.*, Civ. No. 22-2678, 2023 WL 2625007, at *6 (D.N.J. Mar. 24, 2023); *Shaikh v. Dep't of Banking & Ins.*, Civ. No. 19-14092, 2024 WL 1929966, at *12 (D.N.J. Apr. 30, 2024), *reconsideration denied*, 2024 WL 5118429, (D.N.J. Dec. 16, 2024).

With respect to factor one, the Supreme Court recognized the need for quasi-judicial government officials to perform their duties without harassment or intimidation from dissatisfied parties, such as "an individual targeted by an administrative proceeding [who] will act angrily and may seek vengeance in the courts," or a "corporation [that] will muster all of its financial and legal resources in an effort to prevent administrative sanctions." *Butz v. Economou*, 438 U.S. 478, 512, 515 (1978). Here, the public documents show that DOBI promulgated an amendment to its rules that applies the NJHCA to reciprocal insurance exchanges and SSAP No. 25 to AIF Fees, and that

rule was adopted on December 11, 2025 and made effective on January 5, 2026.[4] *See* 58 N.J. Reg. 46(a) (Jan. 5, 2026). Plaintiffs initiated this action on December 19, 2025 — eight days after DOBI adopted the amended rule. (*See* Compl.) Shortly thereafter, Plaintiffs filed a separate mandamus action against DOBI on January 6, 2026 in New Jersey Superior Court, Mercer County. (*See* ECF No. 19-12.) Then, on January 14, 2026, Plaintiffs also appealed DOBI's promulgated rule. (*See* ECF No. 19-10 (Notice of appeal to the New Jersey Appellate Division).) The speed with which Plaintiffs initiated several court actions after DOBI adopted a formal rule adverse to Plaintiffs' legal position here is indicative of the potential harassment and intimidation that quasi-judicial immunity is meant to quell. *See Savadjian*, 2019 WL 6975102, at *3 ("The very existence of this lawsuit, and the speed at which it was filed by a dissatisfied party, warns of the potential for harassment and intimidation that potentially face public officials in [DOBI] Commissioner Caride's position"); *Shaikh*, 2024 WL 1929966, at *12 ("[T]he very existence of this action filed against [DOBI Commissioner] Caride in her individual capacity — less than a year after the [DOBI] issued its final order on October 13, 2018 — demonstrates the need to protect such officials from the risk of harassment by dissatisfied parties, which might skew their decisions out of fear of personal monetary liability."). Factor one, accordingly, weighs in favor of immunity.

Factor two, procedural safeguards, include the presence of: (1) notice to the parties and the public, (2) public hearings, (3) specific procedures for conducting hearings, (4) the right to counsel, (5) the use of subpoenas and oaths, (6) the issuance of written decision, and (7) the preparation of transcripts. *See Dotzel*, 438 F.3d at 326; *Keystone*, 631 F.3d at 98. As it pertains to DOBI's approval orders for the Transaction and Divestiture (Compl. ¶¶ 158, 205), those written orders were preceded by written hearing reports from an administrative officer with findings of fact,

[4] Plaintiffs concede that DOBI recently promulgated a rule amending the regulations. (*See id.* at 17.)

analyses, and recommendations. (*See, e.g.*, ECF Nos. 19-3, 19-6, 19-8.) Public hearings were held for both approval orders and public comments were permitted. (*See* ECF Nos. 19-3 at *4; 19-6 at *8.[5]) Further, in New Jersey, final agency decisions, such as those from DOBI, can be directly appealed to and are exclusively reviewed by the New Jersey Superior Court, Appellate Division. N.J. Ct. R. 2:2-3(a)(2). The presence of procedural safeguards, thus, also weigh in favor of immunity.

The third factor considers "whether the [officials] here can be removed from office based on the substance of their official work" because officials that are "removable during their terms only for cause," are "[l]ike judges and unlike most executive officers." *Dotzel*, 438 F.3d at 326. This factor is neutral because DOBI Commissioners serve at the pleasure of the Governor of the State of New Jersey, N.J. Stat. Ann. § 17:1-2(a), and can be removed with or without cause.

The relevant inquiry as to the fourth factor is whether the [official's] decisions are purely discretionary[ ] or are constrained by outside law." *Dotzel*, 438 F.3d at 326-27. Relevant to the Transaction and Divestiture, transactions for the acquisition of control of, divestiture or, or merger with a domestic insurer are governed by N.J. Stat. Ann. § 17:27A-2. The statute provides that the Commissioners shall approve of a transaction unless he or she finds that one or more of the seven criteria for disapproval have been established. N.J. Stat. Ann. § 17:27A-2(d)(1). Moreover, after a public hearing is held and the hearing report is issued to the Commissioner, he or she can adopt a final determination and, in his or her discretion, shall determine whether that determination shall have the same force as though he or she conducted the hearing personally. *Id.* at (d)(2). Furthermore, although "is it not clear to what extent [DOBI] refers to its own prior determinations in reaching [its] decisions," *Dotzel* 438 F.3d at 327, the hearing officer reports, which DOBI

[5] Page numbers that are preceded by an asterisk refer to the page number atop the ECF header.

adopted for purposes of approving the Transaction and Divestiture, substantially analyzed whether any of the seven factors for disapproving the transaction were present. (ECF Nos. 19-3 at *2-14; 19-6 at *7-15.) This factor, thus, also weighs in favor of immunity.

The fifth factor considers whether the decision-making process contains the "hallmarks of adversarial proceedings." *Doztel*, 438 F.3d at 327. Here, notice of a public hearing must be provided with respect to a transaction falling within the scope of N.J. Stat. Ann. § 17:27A-2. Moreover, the public hearing operates "in the same manner as is present allowed in the Superior Court of" New Jersey and permits: (1) discovery; (2) the presentation of evidence; (3) oral augmentation; and (4) direct and cross examination of witnesses. *Id.* Factor five, accordingly, weighs in favor of immunity.

The sixth factor considers whether appellate review is available. "A formal appellate procedure is probably the single most court-like feature a governmental body can have." *Id.* As previously recognized, the New Jersey Court Rules provide that a final agency order and the validity of any promulgated rule by such agency can be appealed directly to the Appellate Division as a right. N.J. Ct. R. 2:2-2(a)(2). This factor weighs in favor of immunity.

Having considered all of the *Cleavinger* factors, the Court finds that the scale tips decidedly in favor of immunity. Defendants' roles are quasi-judicial in nature. But that immunity is not absolute. The Court next addresses Plaintiffs' argument that Defendants' actions fell outside of the scope of any quasi-judicial function by: (1) "applying HCA requirements to the Transaction, thereby threatening and delaying that transaction and directly harming Plaintiffs"; and (2) "demanding information pursuant to SSAP No. 25 about the AIF Fee paid by unrelated subscribers to RCM." (Pls.' Opp'n Br. at 14–17 (citing Compl. ¶¶ 174–206, 230–245).)

"[I]mmunity is overcome in two sets of circumstances." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Immunity is not extended to quasi-judicial officers when the actions are not taken within a quasi-judicial capacity or when the action is taken in the complete absence of jurisdiction. *Id.* at 11–12. Nevertheless, a quasi-judicial officer, much like "[a] judge will not be deprived of immunity because the action he [or she] took was in error, was done maliciously, or was in excess of his [or her] authority." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 184, 180 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). To overcome immunity, a plaintiff must sufficiently plead facts to "establish that the application of an exception to the doctrine of absolute judicial immunity is above the speculative level." *Kirkland v. DiLeo*, 581 F. App'x 111, 114–15 (3d Cir. 2014) (citing *Twombly*, 550 U.S. at 555).

Here, the Court is not satisfied that Plaintiffs have adequately pled facts demonstrating that an exception to quasi-judicial immunity applies. A full reading of the Complaint yields the conclusion that Defendants have only acted within the scope of their regulatory capacity and, thus, within DOBI's jurisdiction. Plaintiffs' allegations that Defendants acted *ultra vires* and beyond the scope of their authority are otherwise unsupported. (*See generally* Compl.) DOBI Commissioners have authority to: (1) "[p]erform, exercise and discharge the functions, powers and duties of the department through those divisions established by law or as the [C]ommissioner deems necessary" under N.J. Stat. Ann. § 17:1-15(c); (2) "compel by subpoena . . . the production of such books, records, accounts, papers, and other documents as are appropriate" pursuant to N.J. Stat. Ann. § 17:1-16; (3) "condition the approval" of a transaction "on the removal of [any] basis [for] disapproval" under N.J. Stat. Ann. § 17:27A-2; and (4) initiate examinations as to the financial condition of an insurer under N.J. Stat. Ann.§§ 17:27A-5, 17:50-8.

Accordingly, the Court finds that Plaintiffs' claims against Defendants in their individual capacity must be dismissed without prejudice based on Defendants' absolute quasi-judicial immunity.

**C. STATUTE OF LIMITATIONS**

Defendants also seek dismissal of all of Plaintiffs' claims against them — in any capacity — based on the applicable statute of limitations. According to Defendants, Plaintiffs' cause of action accrued in December 2022, when Plaintiffs purportedly suffered an injury as a result of DOBI issuing Order A22-13 that approved the Transaction as part of DOBI's first attempt "to impose its unlawful interpretation of the HCA and SSAP No. 25." (Defs.' Moving Br. at 47) (quoting Compl. ¶ 284.) Defendants therefore argue that the applicable statute of limitations elapsed two years later in December 2024, well before this suit was filed a year later in December 2025. (*Id*. at 48.)

Plaintiffs do not dispute Defendants' asserted accrual date or the two-year limitations period. Instead, Plaintiffs' invoke the continuing violation doctrine. They contend Defendants "engaged in a continuous and escalating pattern of retaliation against Plaintiffs for their exercise of their First Amendment rights." (Plfs.' Opp. Br. at 35.) Plaintiffs broadly refer to Defendants' numerous acts as alleged in the Complaint. (*Id*.)

The continuing violations doctrine "is an 'equitable exception to the timely filing requirement.' " *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014). The doctrine applies "when a defendant's conduct is part of a continuing practice" and "more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). "In such cases, 'so long as the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time

barred.' " *Randall v. City of Phila. L. Dep't*, 919 F.3d 196, 198 (3d Cir. 2019). Although the doctrine is most frequently applied to employment discrimination cases, courts in the Third Circuit have applied the doctrine to Section 1983 claims. *See, e.g.*, *Davis v. N.J. Dep't of Corr.*, Civ. No. 10-6439, 2011 WL 5526081 (D.N.J. Nov. 14, 2011).

However, as Defendants highlight, the Third Circuit has also held that continued *enforcement* of an existing order does not constitute a continuing violation. (Defs.' Reply Br. at 25) (citing *Rose v. Cnty. of York,* 262 F. App'x 485, 487 (3d Cir. 2008) (emphasis added)). In that case, the appellant asserted violations of his civil rights stemming from a custody dispute, including a claim that the order denying him custody "violated Appellant's procedural due process; and, thus, violated Appellant's right to raise his child." *Id.* at 486. The appellant argued there was a continuing violation because "[t]he damages resulting from [the custody] order are still being enforced on the [Appellant]." *Id.* at 487. The Third Circuit concluded that "asserted continuing violations arise from the ill effects of the original alleged violation," and found the enforcement of the order was not a continuing violation. *Id.*

The Court finds the DOBI's enforcement efforts are analogous to those *Rose*. DOBI construed the HCA and SSAP No. 25 as applying to CURE and RMC in December 2022. Its ongoing efforts to enforce its interpretations are not separate violations. They are the effects of DOBI's December 2022 decision, of which Defendants were well aware. *See Bennett v. Susquehanna Cnty, Children & Youth Services*, 592 F. App'x 81, 84-85 (3d Cir. 2014) (affirming district court's rejection of continuing violations doctrine when plaintiff "was well aware of" the injury she suffered by virtue of an initial order); *Chitester v. Stacy Law*, Civ. No. 17-12650, 2023 WL 3167646, at * (D.N.J. April 28, 2023) (rejecting continuing violations doctrine where plaintiff

should have been aware her constitutional rights had been violated). The continuing violations doctrine therefore does not apply.

Based on the facts as alleged in the Complaint, the Court finds that: Plaintiffs' claim accrued in December 2022, the statute of limitations elapsed in December 2024, and the continuing violations doctrine does not apply. Accordingly, the Court finds that Plaintiffs' claims are barred by the statute of limitations. They will be dismissed without prejudice.

## V. CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion to Dismiss. The Complaint will be DISMISSED WITHOUT PREJUDICE. Plaintiffs will be given leave to file an Amended Complaint within 30 days, limited to remedying the defects identified herein. An appropriate Order will follow.

Date: November 25, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**